**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **MASCO CABINETRY MIDDLEFIELD LLC, et al.,** ) | CASE NO. 1:11CV2197 |
| Plaintiffs, ) | JUDGE CHRISTOPHER A. BOYKO |
| ) | |
| vs. ) | **OPINION AND ORDER** |
| ) | |
| **CEFLA NORTH AMERICA, INC., et al.,** ) | |
| ) | |
| Defendants. ) | |

**CHRISTOPHER A. BOYKO, J.:**

This matter comes before the Court upon the Motion and Amended Motion for Summary Judgment of Defendants, CEFLA North America, Inc. and CEFLA SC ("CEFLA"). (ECF DKT #33 & #37). Also before the Court is the Cross-Motion for Summary Judgment of Plaintiffs, Masco Cabinetry Middlefield, LLC and Insurance Company of the State of Pennsylvania ("Masco"). (ECF DKT #36). For the following reasons, CEFLA's Motion is granted and Masco's Motion is denied.

**I. PROCEDURAL BACKGROUND**

Masco and the Insurance Company of the State of Pennsylvania ("ICOP") brought this suit against Cefla North America, Inc. and its parent company Cefla SC in October 2011.

(ECF DKT #1).  ICOP is a party to this suit based on its subrogation rights under its insurance policy with Masco.  (ECF DKT #1 & #13).  Plaintiffs allege in their Amended Complaint (hereafter, "Complaint") that CEFLA designed, manufactured and distributed a Group Roll Coat System, including a "Cooling Tunnel," which was later installed for use in the Masco facility in Middlefield, Ohio.  A fire occurred within the Cooling Tunnel in October of 2009.  Plaintiffs are suing for Negligence and Product Liability seeking to recover the $4,729,092.00 in damages resulting from the Cooling Tunnel fire.  (ECF DKT #13).

Defendants filed their initial Motion for Summary Judgment on June 7, 2013 (ECF DKT #33).  Plaintiffs filed their Response to Defendants' Motion for Summary Judgment on July 15, 2013 (ECF DKT #35).  Defendants filed their Amended Motion for Summary Judgment and Memorandum of Law on July 18, 2013 (ECF DKT #37-1).  Defendants filed their Reply to Plaintiffs' Opposition to Defendants' Motion for Summary Judgment on July 25, 2013 (ECF DKT #38).  Finally, after obtaining leave, Plaintiffs filed their Sur-Response in Opposition to Defendants' Motion for Summary Judgment on August 12, 2013 (ECF DKT #41).

Plaintiffs filed their Cross-Motion for Partial Summary Judgment on July 15, 2013 (ECF DKT #36).  Defendants filed their Opposition to Plaintiffs' Cross-Motion for Partial Summary Judgment on August 15, 2013 (ECF DKT #42).  Finally, Plaintiffs filed their Reply in Support of Their Cross-Motion for Partial Summary Judgment on August 23, 2013 (ECF DKT #43).

## II. FACTS

On January 24, 2004, Plaintiff Masco, through its entity Kraftmaid Cabinetry, Inc.,

entered into a Sales Agreement with Stiles Machinery Inc. (hereafter, "Sales Agreement"). (ECF DKT #37-5 at Page ID #462-64).  Stiles Machinery, Inc. (hereafter "Stiles") is a distributor for various equipment manufacturers, including CEFLA.  (ECF DKT #35 at Page ID #300).  Masco contracted solely with Stiles for its purchase of such equipment. *Id.*  The Sales Agreement was for the CEFLA Group Roll Coat System (UV3) production line machinery.  (ECF DKT #37-5 at Page ID #462-64).  The Sales Agreement referred directly to CEFLA's proposal to Masco for the manufacturing of the machinery. *Id.*  The Sales Agreement included two references to additional contractual instruments.  First, in the "Notes" section of the Sales Agreement the parties included the handwritten reference that: "Masco terms and conditions apply according to current national purchasing agreement with Stiles Machinery." *Id.*  Second, below the signature line, the Sales Agreement has printed in bold capital letters: "**YOUR ORDER IS SUBJECT TO THE TERMS AND CONDITIONS PRINTED ON THE REVERSE SIDE**." *Id.*

The machinery purchased by Masco was installed in the Masco facility in Middlefield, Ohio sometime in 2004.  (ECF DKT #37-5 at Page ID #448).  In October 2009, there was a fire at the Masco Middlefield facility in the housing of the UV3 line.  Plaintiffs' Complaint alleges that the UV3 cooling tunnel was defectively designed and was the cause of the fire at the Masco Middlefield facility. *Id.*  Plaintiffs are seeking damages caused by the fire, including approximately eight days of lost production due to the extensive cleanup needed after the fire and significant damages to Masco's inventory. *Id.*  Plaintiffs' Complaint alleges that the total cost of damages caused by the fire was $4,729,092.00. (ECF DKT #13 at 4).

-3-

## III. ISSUE

Defendants filed a Motion for Summary Judgment and later an Amended Motion for Summary Judgment, on June 7, 2013 and July 18, 2013 respectively. (ECF DKT Nos.33 & 37-1).  Defendants assert that the Court should enter summary judgment in their favor on all Counts of Plaintiffs' Complaint.  Specifically, Defendants assert that CEFLA has the right to enforce the Sales Agreement between Masco and Stiles for the sale of the CV3 cooling tunnel.  Accordingly, Defendants argue that the Sales Agreement's choice of Michigan law provision applies.  In applying Michigan law, and the Terms and Conditions of the Sales Agreement, Defendants further contend that they are entitled to summary judgment on the grounds of statute of limitations, contractual time limitations, limitations as to recovery of consequential damages and limitation of tort claims where a contract governs under Michigan's economic loss doctrine.  In their response, Plaintiffs argue that Defendants are not parties to the Sales Agreement.  (ECF DKT #35).  Consequently, Plaintiffs assert that since the Sales Agreement is not applicable, Ohio law applies and Defendants' arguments regarding the statute of limitations, contractual time limitations, Michigan's economic loss doctrine and contractual limitation of consequential damages do not apply.  Furthermore, Plaintiffs assert that, since Defendants are not parties to the Sales Agreement, Plaintiffs' tort law claims survive summary judgment.  Defendants' Reply raises alternative theories that make CEFLA a party to the Sales Agreement between Masco and Stiles, including agency, privity and third-party beneficiary to the contract. (ECF DKT #38).  Defendants' Reply also restates their original argument that the CEFLA entities are parties to the Sales Agreement and reiterates their arguments of contractual time limitations and limitations of consequential damages. *Id.*

In their Sur-Response in Opposition, Plaintiffs dispute Defendants' alternative theories that the CEFLA entities would be parties to the Sales Agreement.  (ECF DKT #41).

Plaintiffs have filed a Cross-Motion for Partial Summary Judgment, moving to dismiss Defendants' Affirmative Defenses of statute of limitations, contractual time limitations, Michigan's economic loss doctrine and contractual limitation of consequential damages. (ECF DKT #36).  Defendants' Opposition asserts essentially the same arguments brought forward in their summary judgment filings.  (ECF DKT #42).  Plaintiffs filed their Reply in Support on August 23, 2013, admonishing Defendants' Reply as against the Court's August 12, 2013 Order, which disallowed further briefing, and incorporating by reference their arguments made in their Sur-Response in Opposition to Defendants' Motion for Summary Judgment.  (ECF DKT #43).

## IV. LAW AND ANALYSIS

### A. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed.R.Civ.P. 56(a).  The burden is on the moving party to conclusively show no genuine issue of material fact exists, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994); and the court must view the facts and all inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim.  *Celotex*, 477 U.S. at 324; *Lansing Dairy*,

39 F.3d at 1347. This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hosp. Ass'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trs.*, 980 F.2d 399, 404-06 (6th Cir. 1992). The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distribs. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

**B. Defendants are Parties to the Sales Agreement**

In order to address many of the parties' arguments, the Court must first determine whether CEFLA has the ability to enforce the provisions of the Sales Agreement entered into between distributor Stiles and Kraftmaid Cabinetry, Inc., an entity of Plaintiff Masco. Plaintiffs contend that the Sales Agreement was executed solely between Kraftmaid Cabinetry and Stiles; and argue that since CEFLA is not a party to the Sales Agreement, CEFLA cannot rely on the provisions included in the Sales Agreement and its incorporated instruments.

Plaintiffs' Response to Defendants' Motion for Summary Judgment provides that the reference in the Sales Agreement in the Notes section that the "MASCO TERMS AND CONDITIONS APPLY ACCORDING TO CURRENT NATIONAL PURCHASING AGREEMENT WITH STILES MACHINERY" indicates that the parties intended for only

the terms and conditions from the National Purchase Agreement to apply. While Plaintiffs correctly recognize that a reference to another instrument in an agreement incorporates that instrument by reference, they fail to provide any reason why the other reference in the Sales Agreement should not also be incorporated. Where contract terms are unambiguous, "the court[] will not, in effect, create a new contract by finding an intent not expressed in clear contractual language." *In re Duong*, 451 B.R. 800 (Bankr. N.D. Ohio June 29, 2011) (citing *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 246, 374 N.E.2d 148 (1978)). Plaintiffs are correct that the Masco-Stiles National Purchasing Agreement is incorporated by reference into the Sales Agreement. Plaintiffs, however, ignore the additional reference below the signatures of the parties, in bold capital letters: "**YOUR ORDER IS SUBJECT TO THE TERMS AND CONDITIONS PRINTED ON THE REVERSE SIDE.**" Attached to the Sales Agreement are the Standard Terms and Conditions of Sale of both Stiles and CEFLA Finishing America, Inc. (hereafter, "Stiles-CEFLA Terms and Conditions").

Plaintiffs strategically try to ignore the reference to the Stiles-CEFLA Terms and Conditions by attaching only the Sales Agreement page, without the Stiles-CEFLA Terms and Conditions pages and referencing just that page in its affidavits and depositions. However, Plaintiffs cannot deny the incorporation of the Stiles-Cefla Terms and Conditions. The additional pages of the Stiles-CEFLA Terms and Conditions appear in the sequential Bates numbering of Plaintiff Masco's own production of documents. This indicates that Masco's records kept the referenced Stiles-CEFLA Terms and Conditions with the Sales Agreement. Additionally, the incorporation of the Stiles-CEFLA Terms and Conditions was verified during the deposition of Masco's corporate representative, Thomas Anderson. (ECF DKT

#37-5). When Mr. Anderson was asked to verify the Sales Agreement and confirm the number of pages, he clarifies with opposing counsel that the Sales Agreement is three pages due to the incorporation of the Stiles-CEFLA Terms and Conditions. (ECF DKT #37-5 at Page ID #447). Masco's attorney then confirms that the exhibit being referenced - the Masco-Stiles Sales Agreement - is three pages long with the Bates numbers of MASCO 330 - 332. *Id.* Thus, despite Plaintiffs' best efforts to ignore the attached and referenced Stiles-CEFLA Terms and Conditions, these too are part of the Sales Agreement.

Since both the Masco-Stiles National Purchasing Agreement and the Stiles-CEFLA Terms and Conditions are referenced in the Sales Agreement, the Court acknowledges that "[w]hen documents are incorporated by reference into a document, they are to be read as though they are restated in the contract." *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1016 (6th Cir. 2003) (quoting *Blanchard Valley Farmers Coop., Inc. v. Rossman*, 145 Ohio App.3d 132, 761 N.E.2d 1156, 1162 (2001)). Accordingly, both the Masco-Stiles National Purchasing Agreement and the Stiles-CEFLA Terms and Conditions are incorporated by reference into the Sales Agreement. Since the Terms and Conditions of CEFLA Finishing America, Inc. are explicitly incorporated by reference, the Court finds that CEFLA is a party to the Sales Agreement; and therefore, CEFLA can rely upon those Terms and Conditions in this dispute.

**C. Michigan Law Applies to Plaintiffs' Claims**

Because both the Masco-Stiles National Purchase Agreement and the Stiles-CEFLA Terms and Conditions are incorporated into the Sales Agreement by reference, the Court must further determine which state's law governs. Plaintiffs contend that Ohio law applies to their

claims because only the Masco-Stiles National Purchasing Agreement governs. The Masco-Stiles National Purchasing Agreement contains no choice of law provision. Plaintiffs argue that, in the absence of a choice of law provision, the Court should apply the law of the state where the injury occurred. (ECF DKT #35 at 9). Defendants contend that since the Stiles-CEFLA Terms and Conditions are part of the Sales Agreement, and those terms and conditions provide that Michigan law governs, Michigan law should apply. (ECF DKT #37).

CEFLA's Terms and Conditions include a section entitled *Governing Law, Venue, Service of Process*, which states:

This contract shall be deemed to have been made in the State of Michigan, and any action arising out of it shall be governed by the law of the State of Michigan. Any action arising out of this contract may be brought only in a state or federal court sitting in the County of Kent, State of Michigan. Buyer consents that such courts shall have personal jurisdiction over Buyer with respect to any such action. (ECF DKT #37-5 at Page ID #464).

Generally, when interpreting contracts, the court must first determine if any contractual terms are ambiguous. *Pilkington N.A., Inc. v. Travelers Cas. & Sur. Co.*, 3:01CV7617, 2009 WL 2243590 (N.D. Ohio July 27, 2009) (citing *Shifrin v. Forest City Enters. Inc.*, 64 Ohio St.3d 635, 638, 597 N.E.2d 499 (1992)). A contractual term is considered ambiguous if it is reasonably susceptible to more than one interpretation. *Id.* (citing *Books A Million, Inc. v. H & N Enters., Inc.*, 140 F.Supp.2d 846, 853 (S.D. Ohio 2001)). The Stiles-CEFLA Terms and Conditions contain the only choice of law provision in the Sales Agreement and its incorporated instruments. The Masco-Stiles National Purchasing Agreement contains a choice of law provision which has been crossed out and initialed by the consenting signors. (ECF DKT #35-2 at Page ID #327). Thus, the contract instruments are not susceptible to more than one interpretation regarding the choice of law provision. If a contractual term is deemed to be

ambiguous it is "the province of the jury to ascertain and determine the intent and meaning of the contracting parties[.]" *Id*. (quoting *Amstutz, Adm'r v. Prudential Ins. Co.*, 136 Ohio St. 404, 408, 26 N.E.2d 454 (1940)). Conversely, since the choice of law term is unambiguous, the contract "'interpretation is a matter of law and there is no issue of fact to be determined' . . . [i]n such a case, the contract's terms are to be given their plain and natural meaning." *Id.* (quoting *Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc.*, 15 Ohio St.3d 321, 322, 474 N.E.2d 271 (1984); citing *Books A Million, Inc.,* 140 F.Supp.2d at 853). Accordingly, the Court determines that the Sales Agreement is governed by the Stiles-CEFLA Terms and Conditions' choice of law provision, which states that Michigan law applies.

**D. Plaintiffs' Claims are barred by the Contractual Limitations Period**

Next, the Court must determine whether the contractual limitations period contained in the Stiles-CEFLA Terms and Conditions is an unambiguous contractual term. The Stiles-CEFLA Terms and Conditions provide that "[n]o suit may be brought by [Masco] for any breach by [CEFLA] or any other claim arising out of this contract after two years from the date of delivery of the goods[.]" (ECF DKT #37-5 at Page ID #464). The Stiles-Masco National Purchase Agreement also includes a contractual time limitation of "not later than one (1) year following date of delivery of the equipment to the purchaser[.]" (ECF DKT #35-2 at Page ID #331). The Sales Agreement itself does not include any provision establishing a conflicting applicable statute of limitations provision. Utilizing the same standard discussed above, the contractual term will be deemed ambiguous if it is reasonably susceptible to more than one interpretation. *Pilkington, supra* (citing *Books A Million, Inc.,* 140 F.Supp.2d at 853). Thus, although the contractual term is reasonably susceptible to more than one interpretation – a two

year limitation period under the Stiles-CEFLA Terms and Conditions and a one year limitation period under the Stiles-Masco National Purchase Agreement – any evaluation of the term by a jury is unnecessary since both time periods have lapsed.  There is no relevant issue of material fact which must be decided by a jury.  It is clear that the parties intended for some sort of shortened time limitations period.  The Court must view the facts and all inferences in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co., supra.*  However, even if the Court construes the time limitation facts against the moving party, the suit is still time-barred.          Before disposing of this case based on the contractual time limitations, the Court must consider whether the time limitation violates Michigan law.  Michigan law provides that parties may contractually agree to a shortened period of limitation.  Michigan's state law adoption of the UCC provides that "[b]y original agreement the parties may reduce the period of limitation to not less than 1 year[.]" Mich. Comp. Laws Ann. § 440.2725.  Furthermore, the Michigan Supreme Court has decided that unambiguous contractual provisions which shorten the statute of limitations period will be enforced unless they violate law or public policy. *DeFrain, v. State Farm Mut. Auto Ins. Co.*, 491 Mich. 359, 372-73, 817 N.W2d 504, 512 (2012). The Michigan Supreme Court disapproves of giving courts the power to determine whether a shortened period of limitation is "reasonable," rooting its argument in the right to contract freely: "[w]hen a court abrogates unambiguous contractual provisions based on its own independent assessment of 'reasonableness,' the court undermines the parties' freedom of contract." *DeFrain,* 491 Mich. at 372-73 (quoting *Rory v. Continental Ins. Co.*, 473 Mich. 457, 470, 703 N.W.2d 23 (2005) (internal quotations omitted)).  Thus, circumstances under which a court can determine that a contractually-shortened limitations period violates law or public policy are narrow and

must have been created only through one of the various legal processes, including state and federal constitutions, statutes and common law.  *Id.* (citing *Rory*, 473 Mich. at 471).  The Court can find no prohibition against shortened limitations periods for the sale of goods in state or federal constitutions, Michigan statutes or Michigan common law.  In fact, in *Liparoto Const., Inc. v. Gen. Shale Brick, Inc.*, the Michigan Court of Appeals upheld a shortened one-year contractual limitations provision in a brick supplier's invoice to a construction company, finding that it was not procedurally unconscionable.  *Liparoto Const., Inc. v. Gen. Shale Brick, Inc.*, 284 Mich. App. 25, 30, 772 N.W.2d 801, 805 (2009).  Accordingly, the Court finds that neither the two year contractual limitations period provided in the Stiles-CEFLA Terms and Conditions nor the one year contractual limitations period in the Stiles-Masco National Purchasing Agreement is unconscionable; and therefore, neither provision violates Michigan law.

      The Stiles-CEFLA Terms and Conditions' contractual time limitation period provides that Buyer (Masco) had two years from the date of delivery of the goods to bring any cause of action regarding the goods governed by the contract.  Similarly, the Stiles-Masco National Purchasing Agreement provides that Buyer (Masco) has one year from the date of delivery of the goods to bring any cause of action regarding the goods governed by the contract.  Masco received the goods in 2004. (ECF DKT #37-5).  Plaintiffs filed this suit on October 14, 2011, seven years after the delivery of the goods.  (ECF DKT #1).  This is well beyond either of the contractual periods.

## V. CONCLUSION

      Defendant CEFLA's  Motion for Summary Judgment (ECF DKT #33 & #37) is granted on the basis that Plaintiff Masco's claims are time-barred by the contractual limitations period.

The Court, therefore, enters summary judgment in favor of Defendants on all Counts of Plaintiffs' Complaint. Since the contractual limitations period is dispositive, the Court finds that it is unnecessary to address any of the remaining arguments presented by the parties, including those raised in Plaintiffs' Cross-Motion for Partial Summary Judgment. Accordingly, Plaintiffs' Cross-Motion for Partial Summary Judgment (ECF DKT #36) is denied.

**IT IS SO ORDERED.**

s/ Christopher A. Boyko
**CHRISTOPHER A. BOYKO**
**United States District Judge**

**Dated: March 31, 2014**